**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 26-61375-CIV-DAMIAN**

**ANDRICK ELI JHON LUZARDO BALZAN**,

Petitioner,

v.

**WARDEN,** *Broward Transitional Center*, *et al.*,

Respondents.

__________________________________________/

**ORDER ON PETITION FOR WRIT OF *HABEAS CORPUS***

**THIS CAUSE** is before the Court on Petitioner, Andrick Eli Jhon Luzzardo Balzan's ("Petitioner"), *pro se* Petition For Writ of *Habeas Corpus* [ECF No. 1] (the "Petition"), filed on May 7, 2026. Respondents filed a Response to this Court's Order to Show Cause [ECF No. 5] on May 21, 2026 [ECF No. 6 ("Response")], and Petitioner filed a Reply on June 8, 2026 [ECF No. 7 ("Reply")].

THE COURT has reviewed the Petition, the Response, the relevant legal authorities, and the pertinent portions of the record and is otherwise fully advised.

## I. BACKGROUND

The background relevant to Petitioner's immigration status and proceedings before the Immigration Court is set forth in the parties' submissions. *See generally* Pet., Resp. Those facts relevant to the issues now before this Court are discussed below.

Petitioner is a native and citizen of Venezuela who is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Broward Transitional Center. Petitioner first encountered immigration officials on February 22, 2019, at or near the Gateway to the Americas Bridge 1 in Laredo, Texas, where he applied for admission as an

unaccompanied alien child ("UAC"). Respondents issued a Notice to Appear ("NTA") that same day, February 22, 2019, which placed Petitioner in full removal proceedings. *See* ECF No. 1-2 at 3. Petitioner was then released to his father pending removal proceedings. [ECF No. 6-5 ¶ 5]. It is not clear from the record before this Court what immigration proceedings, if any, occurred after the issuance of the NTA. What is clear is that Petitioner was subject to Temporary Protected Status ("TPS") up until November 20, 2025, when USCIS terminated Petitioner's TPS. *Id.* ¶ 6. Petitioner alleges that he has a pending asylum application, *see* Pet. ¶ 8, but Respondents neither confirm nor deny its existence or the status of the same.

On December 4, 2025, ICE encountered Petitioner during an operation in Davie, Florida and took him into ICE custody. *Id.* ¶ 7. On January 20, 2026, Petitioner was served a superseding NTA that commenced removal proceedings under section 240 of the Immigration and Nationality Act ("INA"), and the NTA designated petitioner as "an arriving alien." [ECF No. 6-3]. Petitioner remains detained at Broward Transitional Center ("BTC") pending the conclusion of full removal proceedings. *See* Resp. at 5-6.

On May 7, 2026, Petitioner filed the *habeas* Petition now before this Court and challenges his continued detention under 8 U.S.C. § 1225(b). In the Petition, Petitioner argues, generally, that he is entitled to a bond determination hearing and that 8 U.S.C. § 1226(a) applies to individuals in his circumstances, that is, aliens in the United States who were not lawfully admitted, rather than § 1225, which applies to aliens seeking admission to the United States. *See generally* Pet.

Respondents, on the other hand, argue that Petitioner is an alien seeking admission whose circumstances are governed by the provisions of § 1225(b) such that he is subject to mandatory detention based on the plain language of the statute. Respondents also argue that

Petitioner failed to exhaust his administrative remedies. *See generally* Resp. Respondents contend that what sets this case apart from the typical habeas proceeding addressing the classification of an alien under Sections 1225(b) versus 1226(a) is that here, Petitioner entered the country as an unaccompanied alien child ("UAC") subject to the protection of the Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"), 8 U.S.C. § 1232. Respondents argue that the TVPRA, which mandates placement of UACs in full removal proceedings under Section 240 of the INA (as opposed to expedited removal under Section 235(b) for other applicants for admission at the border), *see* § 1232(a)(5)(D), permits DHS to wait until a UAC reaches adulthood and then categorize the alien as an "arriving alien" for the purpose of subjecting the individual to mandatory detention.

Petitioner filed a Reply that primarily goes into the human factors and personal prejudice he has faced as a result of his continued detention and highlights his lack of criminal record and his family ties in the United States. The Petition is ripe for adjudication.

## II. LEGAL STANDARD

District courts have the authority to grant writs of *habeas corpus*. *See* 28 U.S.C. § 2241(a). *Habeas corpus* is fundamentally "a remedy for unlawful executive detention." *Munaf v. Geren*, 553 U.S. 674, 693 (2008) (citation omitted). A writ may be issued to a petitioner who demonstrates that he is being held in custody in violation of the Constitution or federal law. *See* 28 U.S.C. § 2241(c)(3). This Court's jurisdiction extends to challenges involving immigration-related detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III. DISCUSSION

At the outset, this Court is mindful of the Eleventh Circuit's recent decision in *Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami*, in which the court held that noncitizens who

entered the United States without inspection but were later apprehended in the interior of the country are not categorically subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A). 175 F.4th 1258 (11th Cir. 2026). In concluding that such individuals are generally detained pursuant to 8 U.S.C. § 1226(a), the court explained that § 1225(b)(2)(A) applies only to noncitizens who are "seeking admission," meaning those actively pursuing lawful entry after inspection and authorization by an immigration officer. *Id.* at 1269. The court reasoned that mere physical presence in the United States without prior admission does not itself render a noncitizen "seeking admission" within the meaning of the statute. *Id.* Accordingly, the court affirmed the grant of habeas relief in that case and held that the petitioners were entitled to individualized bond hearings under § 1226(a). *Id.*

Here, as Respondents point out, Petitioner is situated slightly differently from the petitioners in *Hernandez Alvarez* because the Petitioner was initially encountered as someone who "applied for entry" (*see* ECF No. 6-1 at 2), as opposed to having been initially encountered in the interior of the country after entering surreptitiously. However, Respondents do not offer convincing reasons why Petitioner should be considered an applicant for admission even today, seven years later, when Petitioner was not detained as an applicant at the border or as an arriving alien, but as an individual present in the country without authorization, like the petitioners in *Hernandez Alvarez*. And Respondents offer no authority that validates their interpretation that an aged-out UAC is subject to mandatory detention through the conclusion of full immigration proceedings.

Review of decisions from courts in the Southern District of Florida reflects that the courts in this District appear to unanimously agree with the notion that an aged-out UAC is an alien present in the United States "who has not been admitted or paroled," like those in

*Hernandez Alvarez*, rather than an applicant for admission at a port of entry.[1] *See Agustin v. Warden, Krome North Serv. Proc. Ctr.*, No. 26-cv-21093, 2026 WL 1309053, at *3 (S.D. Fla. May 13, 2026) (Bloom, J.) ("There exist no material distinctions between [the aged-out UAC petitioner] here and the petitioners in [*Hernandez Alvarez*]. Though Petitioner applied for admission into the United States at the border in 2018, he was ultimately detained after a traffic stop in the interior of the country."); *Perez v. Bondi*, No. 26-cv-60434, 2026 WL 850671, at *3 (S.D. Fla. Mar. 17, 2026) (Augustin-Birch, M.J.) (recommending that aged-out UAC petitioner be given a bond hearing because he was detained while he "was already present in the United States, not while he was seeking entry into the United States"), *report and recommendation adopted* 2026 WL 853073 (S.D. Fla. Mar. 27, 2026) (Middlebrooks, J.); *Ardon-Quiroz v. Assistant Field Dir.*, No. 25-cv-25290, 2025 WL 3451645, at *6 (S.D. Fla. Dec. 1, 2025) (Becerra, J.) (same).

Courts in other districts nationwide also appear to agree that a former UAC detained years later cannot be detained indefinitely without a bond hearing as an "applicant for admission." *See Blanco Cabrera v. Raycraft*, No. 26-cv-00085-DAR, 2026 WL 904606, at *12-13 (N.D. Ohio Apr. 2, 2026) (holding that aged-out UAC is not "seeking admission" when detained years after UAC admission and is entitled to discretionary bond hearing); *Salvador*

---

[1] Further review of decisions from other courts in the State reflects that they, too, recognize that *Hernandez Alvarez* now controls in cases involving aged-out UACs. *Compare Lozano Sousa v. Ripa*, No. 25-cv-1617-JEP-PDB, 2026 WL 958794 (M.D. Fla. Mar. 27, 2026) (Pratt, J.) (denying aged-out UAC's petition because aged-out UACs are still "applicants for admission" subject to mandatory detention), *with Martinez-Ordonez v. Ripa*, No. 26-cv-69-JEP-LLL, 2026 WL 1291922, at *1 (M.D. Fla. May 12, 2026) (Pratt, J.) (acknowledging that the court had previously sided with the respondents on this issue, but following *Hernandez Alvarez* where the Eleventh Circuit held that "§ 1225 applies to arriving aliens seeking entry at the border, whereas § 1226 applies to aliens unlawfully in the interior," the court was bound to grant a bond hearing to the aged-out UAC petitioner).

*v. Bondi*, No. 2:25-cv-07946-MRA-MAA, 2025 WL 2995055, at *7 (C.D. Cal. Sept. 2, 2025) ("[W]hen Petitioner crossed the border and was apprehended, the government did not classify him as an applicant for admission subject to expedited removal. That Petitioner should now—approximately four years after entering the country and being released by ORR—be treated as an 'applicant for admission' defies logic."); *Singh v. Stevens*, 821 F. Supp. 3d 898, 908-09 (N.D. Ohio 2026) (holding that petitioner who originally entered country as UAC before being released and re-detained was "not an 'applicant for admission' subject to mandatory detention under § 1225(b)(2)"); *Madonado v. Olson*, 795 F. Supp. 3d 1134, 1152 (D. Minn. 2025) (holding that petitioner who originally entered as UAC before being released and re-detained was subject to § 1226(a), not § 1225(b)); *Ramirez Perez v. Warden, Florida Soft Side South Detention Ctr.*, No. 2:26-cv-00108-SPC-NPM, 2026 WL 322872, at *1 (M.D. Fla. Feb. 6, 2026) (holding, in case involving a UAC, that "applying § 1225(b)(2) to noncitizens years after they were apprehended at the border and released into the county does not comport with the policy justification for treating noncitizens in the country differently than those seeking entry").

This Court agrees with the reasoning adopted by courts nationwide that a former UAC does not retain his status as an "applicant for admission" when he is encountered and detained years after he was released on his recognizance following the initial application for admission. At that point, Petitioner was present in the United States without having been admitted or paroled, just like the petitioners in *Hernandez Alvarez*, and is likewise entitled to a bond hearing under Section 1226(a).

Thus, this Court finds that 8 U.S.C. § 1226(a) and its implementing regulations govern Petitioner's detention, and not Section 1225(b). Therefore, this Court finds that Petitioner is entitled to an individualized bond hearing as a detainee under Section 1226(a).

This Court has also previously addressed Respondents' argument regarding the failure to exhaust administrative remedies under circumstances like those presented here. The exhaustion requirement under 8 U.S.C. § 1252(d)(1) "is not jurisdictional," but prudential. *Kemokai v. U.S. Att'y Gen.*, 83 F.4th 886, 891 (11th Cir. 2023). Generally, "exhaustion is not required where no genuine opportunity for adequate relief exists. . . or an administrative appeal would be futile[.]" *Linfors v. United States*, 673 F.2d 332, 334 (11th Cir. 1982) (alterations added; citations omitted); *see also United States v. Barbieri*, No. 18-cr-20060, 2021 WL 2646604, at *2 (S.D. Fla. June 28, 2021) (Scola, J.) ("The Court recognizes . . . that administrative exhaustion may be unnecessary where the administrative process would be incapable of granting adequate relief." (alteration added; citation omitted)).

The BIA issued *Matter of Yajure Hurtado* as a published decision, and such decisions "serve as precedents in all proceedings involving the same issue or issues." 8 C.F.R. § 1003.1(g)(2); *see id.* § 1003.1(d)(1). Thus, considering *Matter of Yajure Hurtado*, it is obvious that an alien in Petitioner's situation, who has resided in the United States for years prior to his recent detention, but has not been admitted or paroled, will be subject to mandatory detention without bond under Section 1225(b)(2) upon review by the BIA. *See Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 221 (BIA 2025).

Many other courts, including those in this District, have found that any exhaustion requirements are excused for futility because the result of Petitioner's bond appeal to the BIA is a foregone conclusion under *Matter of Yajure Hurtado*. *See, e.g.*, *Puga v. Assistant Field Office*

*Dir.*, No. 25-24535-CIV, 2025 WL 2938369, at *2 (S.D. Fla. Oct. 15, 2025) (Altonaga, C.J.); *Ardon-Quiroz v. Assistant Field Dir.*, No. 25-cv-25290, 2025 WL 3451645, at *4-5 (S.D. Fla. Dec. 1, 2025) (Becerra, J.); *Inlago Tocagon v. Moniz*, No. 25-cv-12453, 2025 WL 2778023, at *2 (D. Mass. Sept. 29, 2025); *Vazquez v. Feeley*, No. 25-cv-01542, 2025 WL 2676082, at *9–10 (D. Nev. Sept. 17, 2025). This Court concurs with the majority of district courts that have addressed the issue that administrative exhaustion would have been futile in these circumstances and that a failure to exhaust does not strip this Court of jurisdiction over the Petition.

## IV. CONCLUSION

Accordingly, for the reasons set forth above, it is hereby

**ORDERED AND ADJUDGED** that the Petition [**ECF No. 1**] is **GRANTED IN PART** to the extent that Petitioner requests this Court to direct the Immigration Court to give him a bond hearing. It is further

**ORDERED** that Respondents shall **FORTHWITH** afford Petitioner an individualized bond hearing consistent with 8 U.S.C. § 1226(a) or otherwise release Petitioner. The bond hearing must take place no later than **July 9, 2026**. It is further

**ORDERED** that on or before **July 20, 2026**, Petitioner shall file a Joint Status Report informing this Court of whether Petitioner was given a bond hearing, and if so, the outcome of Petitioner's bond hearing and the status of matters relevant to the Petition. Counsel for the Petitioner shall confer with counsel for the Respondents prior to filing the Status Report and must include a certification therein that the Respondents do not object to the representations made regarding the status of this case. It is further

**ORDERED** that the Clerk of Court is **DIRECTED** to **CLOSE** this case for *administrative and statistical purposes only* pending compliance with the instant Order and until further Order of this Court.

This Court retains jurisdiction to address matters that may arise with respect to the Petition, and either party may file a motion to reopen the case should additional relief be sought relating to the Petition or this Order.

**DONE AND ORDERED** in Chambers in the Southern District of Florida, this 1st day of July, 2026.

**MELISSA DAMIAN**
**UNITED STATES DISTRICT JUDGE**

cc: **Andrick Eli Jhon Luzardo Balzan, *Pro Se***
A# 201-697-867
Broward Transitional Center
Inmate Mail/Parcels
3900 North Powerline Road
Pompano Beach, FL 33073

Andrea Luzardo Balzan
5676 NW 194th Ln
Miami Gardens, FL 33055